IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICE DALE WILLIAMS,      )
                                )
        Plaintiff,          )
                                )
      v.                )     Civil Action No.: 2:17cv235-WC
                                )
NANCY A. BERRYHILL,       )
Acting Commissioner of Social Security,  )
                                )
        Defendant.      )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Patrice Dale Williams ("Plaintiff") filed applications for a period of disability and disability insurance benefits on July 15, 2013, alleging disability beginning on July 10, 2013. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to

the conduct of all proceedings and entry of a final judgment by the undersigned United

States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 14); Def.'s Consent to

Jurisdiction (Doc. 13).  Based on the court's review of the record and the briefs of the

parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is

unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of
> Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was sixty-two years old on the date of the hearing before the ALJ.  Tr. 39.

Plaintiff obtained a doctorate in linguistics.  Tr. 41.  Following the administrative hearing,

and employing the five-step process, the ALJ found at Step One that Plaintiff "has not

engaged in substantial gainful activity since July 10, 2013, the alleged onset date[.]"  Tr.

21.   At Step Two, the ALJ found that Plaintiff suffers from the following severe

impairments: "degenerative changes of the knees, degenerative disc disease, diabetes

mellitus with neuropathy, inflammatory arthritis, sleep apnea, chronic obstructive

pulmonary disease, and obesity."  Tr. 21.  At Step Three, the ALJ found that Plaintiff "does

not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments[.]"  Tr. 22.  Next, the ALJ articulated Plaintiff's

RFC as follows:

> the claimant has the residual functional capacity to perform a range of
> "medium work[.]" . . .  Specifically, the claimant has the ability to stand or
> walk about six hours, and she can sit for at least six hours of an eight-hour
> workday.  She can occasionally stoop, crouch, kneel, crawl, and climb, but
> can never climb ladders, ropes, or scaffolding.  She can perform no more
> than frequent reaching and frequent fine and gross manipulation.  She is able
> to perform tasks not involving exposure to extremes of temperature or
> exposure to workplace hazards such as unprotected heights and dangerous
> moving machinery.  She can perform tasks not involving exposure to
> vibrating tools and equipment, and she can perform tasks not involving
> concentrated exposure to pulmonary irritants such as dust, gasses, fumes, and
> smoke.

Tr. 23.  At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff is

"capable of performing her past relevant work as a professor."  Tr. 26.  Accordingly, the

ALJ determined that Plaintiff "has not been under a disability . . . from July 10, 2013, through the date of this decision[.]"  Tr. 26.

## IV.  PLAINTIFF'S ARGUMENT

Plaintiff presents one argument in her "Statement of Issue": "The Commissioner's decision should be reversed because the ALJ's decision provides no consideration to [Plaintiff's] medications and their side effects on [her] RFC."  Pl.'s Br. (Doc. 10) at 3.

## V.  DISCUSSION

Plaintiff argues that the ALJ reversibly erred in failing to adequately consider how the purported side effects of Plaintiff's medications impact her RFC.  *Id.*  She charges that the "ALJ is responsible for making a finding regarding the side effects that a claimant alleges."  *Id.* at 4.  The side effects identified by Plaintiff as most inhibitory of her ability to perform work are inattention and drowsiness.  *Id.* at 4-5.  Plaintiff points to evidence of these side effects in the record, including her complaint to her treating physician, Dr. Richardson, that she is "up all night and sleeps all day" (Tr. 699), frequent complaints to another treating physician of fatigue or, more often, "problems sleeping" (Tr. 439, 441, 445, 449, 451, 453, 455, 457, 459, 462, 463, 465, 468, 472), her statement in a function report that her "meds" can make her "overwhelmingly sleepy" (Tr. 193), and another of her treating physician's warnings that one of her prescribed medications, Neurotonin, can cause sleepiness (Tr. 586, 694).  *Id.* at 5-6.  Plaintiff also points to her testimony at the hearing before the ALJ, in which she stated that she did not believe that she would be able to work because she "couldn't really wake up" and was "totally exhausted."  Tr. 43.  She

further testified that some of her medications "warn [her] not to drive" and that "some things" make her sleepy, but that she uses coffee, energy drinks, and energy shots to mitigate these effects.  Tr. 54.

With regards to medication, it is conceivable that a claimant's use of certain medications may contribute to her disability because of the side effects of those medications.  20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).  Under certain circumstances, then, an ALJ has a duty to investigate the possible side-effects of medications taken by a claimant and to consider those side effects when determining a claimant's RFC. *Compare Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981) (concluding that the ALJ failed to fully develop the record where a pro se claimant testified that she took eight different prescription medications and was "kind of zonked most of the time" and the ALJ failed to either elicit testimony or make findings regarding the effect of the medications on her ability to work), *with Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992) (concluding that ALJ did not fail to develop the record where the claimant did not present evidence he was taking medication that caused side effects), and *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985) (concluding that the Commissioner, upon reopening, did not have a duty to further investigate side effects of a counseled claimant's medications where claimant did not allege that side effects contributed to her disability and stated only that her medication made her drowsy).

Plaintiff appears to argue that the ALJ reversibly erred because he did not mention Plaintiff's purported side effects or, more specifically, did not use the phrase "side effects"

anywhere in his opinion. Doc. 10 at 6. However, the opinion unquestionably discussed Plaintiff's complaints of experiencing fatigue and sleep issues, as well as record evidence pertaining to Plaintiff's sleep apnea. Tr. 25. The ALJ noted records in which Plaintiff's physician, Dr. Richardson, opined that Plaintiff's difficulties with sleeping stemmed from her sleep apnea (*see* Tr. 699), which the ALJ did find to be a severe impairment. Tr. 25. Indeed, as further noted by the ALJ (Tr. 25), even Plaintiff's attorney attributed her experience of daytime fatigue to her combination of cardiomyopathy and sleep apnea, rather than medication side effects. Tr. 38. Finally, Plaintiff also reported that spikes in her blood sugar cause her to need more frequent and longer naps during the day unless she is able to inject insulin before or shortly after eating. Tr. 193. Notably, the ALJ found Plaintiff's diabetes to be a severe impairment. Tr. 21.

In short, then, the record supports that Plaintiff frequently complained of fatigue and problems sleeping, that she was prescribed certain medications which could cause her to feel drowsy, but also that she was medically diagnosed with a sleep disorder that her treating physician believed to be the cause of her fatigue and sleep issues, and that Plaintiff attributed some of her issues with sleep to her diabetes. Although Plaintiff represented in a function report, and similarly testified at the hearing before the ALJ, that her medications caused her to feel sleepy, she does not point to any part of the record where she voiced

such a concern to one of her treating physicians in hopes of altering her medications to combat this purported side effect.

Thus, the only evidence in the record tending to show that Plaintiff's fatigue and issues with sleeping relate to her medications' side effects rather than her sleep apnea is her own subjective statements and testimony to that effect. However, the ALJ—in an aspect of the opinion not challenged by Plaintiff—found that Plaintiff's subjective complaints about "extreme fatigue" and "physical exhaustion and sleeping for days at a time" were "less than fully credible." Tr. 25. The ALJ based this finding on Plaintiff's report of her daily activities, including "housework, light exercise, reading, writing, research, shopping, contacting friends and family, playing the organ, and exploring the internet." Tr. 25. Although Plaintiff also reported that these activities are "at the mercy of meds (most of which can make me overwhelmingly sleepy)," she indeed describes a daily routine day that is filled with physically and mentally stimulating activities and typically includes only a late afternoon nap. Tr. 192-93. The record simply does not objectively establish that Plaintiff's problems with fatigue and sleeping flow from her medications' side effects rather than directly from her diagnosed severe impairments of sleep apnea or even diabetes. As such, the ALJ cannot be faulted for failing to address how Plaintiff's medications' purported side effects impact her RFC.

Furthermore, even if Plaintiff's brief testimony about her purported side effects should have caused the ALJ to specifically address or discount her testimony about side effects, any error by the ALJ in failing to do so was harmless. As discussed above, the

ALJ considered Plaintiff's overall credibility pursuant to applicable law, and his credibility findings are both unchallenged by Plaintiff and are supported by substantial evidence in the record. In particular, in this regard the court takes notice of the ALJ's reliance upon the above-mentioned reports of Plaintiff's daily activities and medical evidence, also relied upon by the ALJ, that Plaintiff "denied fatigue" during one of her more recent visits with her treating physician on July 1, 2013, a few days before her alleged onset of disability. *See* Tr. 553. Thus, it is inconsequential that the ALJ failed to discuss or mention purported side effects because, had the ALJ explicitly done so, he still would have reached the same conclusion: that, whether deemed side effects of medications or direct effects of diagnosed "severe" impairments, Plaintiff's complaints about disabling fatigue and issues with sleep are less than fully credible. *See, e.g., Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (finding error harmless where ALJ would have reached the same result had he followed the proper procedures). Where the ALJ clearly addressed the "effects" about which Plaintiff complains, as well as the credibility of her testimony regarding the severity of those effects, and where the ALJ's findings in those regards are supported by substantial evidence, the ALJ's decision will not be invalidated for his failure to formalistically reference Plaintiff's testimony about side effects.

## VI.    CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 7th day of May, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE